Case 4:17-cv-02031   Document 21   Filed on 01/30/19 in TXSD   Page 1 of 15

United States District Court
Southern District of Texas
**ENTERED**
January 30, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HEATHER THOMAS, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO.: 4:17-CV-2031 |
| § | |
| NANCY A. BERRYHILL, § | |
| COMMISSIONER OF THE § | |
| SOCIAL SECURITY ADMINISTRATION, § | |
| § | |
| *Defendant*. § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Heather Thomas filed this case under 42 U.S.C. § 405(g) of the Social Security Act for review of the Commissioner's final decision denying her request for disability insurance benefits and supplemental security income under the Act. The Commissioner and Thomas moved for summary judgment (Dkt. 12, 14). After considering the pleadings, the record, and the applicable law, the court recommends that the Commissioner's motion be **DENIED**, Thomas's motion be **GRANTED**, and Plaintiff's claims be **REMANDED** to the Commissioner.[1]

### I. BACKGROUND

**1. Factual and Administrative History**

Thomas filed an initial claim for disability on September 27, 2013 alleging disability as of February 4, 2009 due to fibromyalgia, cyclic vomiting syndrome, migraines, lupus, L4-L5 fusion and disc replacement, bipolar II disorder, anxiety disorder, and major depressive disorder. Dkt. 9-4 at 2-3, 12-13. Following the denial of her application and subsequent request for reconsideration, Thomas requested a hearing before an Administrative Law Judge (ALJ). A hearing took place on

---

[1] The district court referred this matter to this magistrate judge for report and recommendation. Dkt. 20.

June 8, 2015. The ALJ issued a decision on September 4, 2015 finding that Thomas was not disabled within the meaning of the Social Security Act. Dkt. 9-4 at 54-75. The Appeals Council granted review and remanded the case back to the ALJ for further administrative action. Dkt. 9-4 at 76-78. A new ALJ held a second hearing on December 15, 2016 at which Thomas and a vocational expert testified live and a mental health expert and an internal medicine expert testified by telephone. Dkt. 9-3 at 34-83. The ALJ issued an unfavorable opinion on February 15, 2017 (Dkt. 9-3 at 12-26), the Appeals Council denied review on May 4, 2017 (Dkt. 9-3 at 2-4), and the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

**2. Standard for District Court Review of the Commissioner's Decision**

Section 405(g) of the Act governs the standard of review in social security disability cases. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[2] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a

---

[2] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). When reviewing the Commissioner's decision, the court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.* The courts strive for judicial review that is "deferential without being so obsequious as to be meaningless." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The court weighs four types of evidence in the record when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir.1991); *Hamilton-Provost v. Colvin*, 605 Fed. App'x 233, 236 (5th Cir. 2015).

### 3. Disability Determination Standards

The ALJ must follow a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718. The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In the first step, the ALJ decides whether the claimant is currently working or "engaged in substantial gainful activity." Work is "substantial" if it involves doing significant physical or

mental activities, and "gainful" if it is the kind of work usually done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972; *Copeland v. Colvin*, 771 F.3d 920, 924 (5th Cir. 2014).

In the second step, the ALJ must determine whether the claimant has a severe impairment. Under applicable regulations, an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.20(c). Under Fifth Circuit binding precedent, "[a]n impairment can be considered as not severe *only if* it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000) (emphasis added) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "Re-stated, an impairment is severe if it is anything more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. *Id.* This second step requires the claimant to make a *de minimis* showing. *See Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992)." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

If the claimant is found to have a severe impairment, the ALJ proceeds to the third step of the sequential analysis: whether the severe impairment meets or medically equals one of the listings in the regulation known as Appendix 1. 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets one of the listings in Appendix 1, the claimant is disabled. If the ALJ finds that the claimant's symptoms do not meet any listed impairment, the sequential analysis continues to the fourth step.

In step four, the ALJ must decide whether the claimant can still perform his past relevant work by determining the claimant's "residual functional capacity" (RFC). "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from

4

her impairments." *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. 404.1545). The ALJ must base the RFC determination on the record as a whole and must consider all of a claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545; s*ee also Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove she is not currently working and is no longer capable of performing her past relevant work. *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000). If the claimant meets her burden, the burden shifts to the commissioner at step five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, in order for the Commissioner to find in step five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given her RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

    **4.**    **The ALJ's Decision**

The ALJ performed the standard 5-step sequential analysis. The ALJ found that Thomas met the insured status of the Act through December 31, 2014; had not engaged in substantial gainful activity since her alleged onset date of February 4, 2009; and had the severe impairments of "low back pain status post lumbar spine fusion and decompression; headaches; vomiting syndrome; obesity; and fibromyalgia." Dkt. 9-3 at 14-15. The ALJ determined that none of her impairments, alone or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 18.

The ALJ further determined that Thomas had the residual functional capacity "to perform light work as defined in 20 C.F.R. § 414.1567(b) and 416.967(b). She would miss 2 days of work

5

per month due to complications from a physical impairment of a vomiting syndrome. *Id.* at 19. Based on the testimony of a vocational expert, the ALJ found that wtih these restrictions Thomas could perform her past relevant work as a bank manager, a sales person/wireless, and a retail sales manager." *Id.* at 25. Thus, the ALJ concluded that Thomas "has not been under a disability, as defined in the Social Security Act, from February 4, 2009, through the date of this decision." *Id.* at 26.

## II. ANALYSIS

Thomas asserts five points of error in her appeal to this court:

1. Is cyclic vomiting syndrome an episodic illness subject to the rule of *Singletary v. Bowen*, requiring the ALJ to explicitly find that the claimant can "maintain employment" or "hold the job" for an extended period of time? Does the ALJ's failure to follow the *Singletary* rule warrant remand?
2. Is the ALJ's reasoning with respect to the medical opinions of the two psychologists - Dr. Griffin (the testifier) and Dr. Swanson (the examining psychologist) internally inconsistent, so as to preclude meaningful review?
3. Did the ALJ properly evaluate Ms. Thomas's apparent entitlement (at the very least) to a "closed period" of disability for part (or all) of the period between January 2009 and April 2012? Does the Decision explain the ALJ's denial of that relief in a manner sufficient for the Court to meaningfully review it?
4. Dr. Goldstein, the expert on which the ALJ chiefly relied for the physical aspects of the RFC finding, testified that Ms. Thomas needs "ready access" to a bathroom and the liberty to go immediately to it when she gets a CVS attack at work. The residual functional capacity (RFC) determination omits this limitation, but does not explain its absence, while relying heavily on Dr. Goldstein. Does this warrant remand?
5. Is the absence from the Decision of the required evaluation of medication side effects reversible error, in light of the RFC finding that Ms. Thomas work-related mental functioning will always be perfect.

Dkt. 15 at 5. The court finds that grounds 1, 3, and 4 have merit and require remand. Because the court finds remand is required on these grounds, it does not consider grounds 2 and 5.

1. **The *Singletary* standard.**

The ALJ found that Thomas had the severe impairment of cyclic vomiting syndrome. Thomas contends that cyclic vomiting syndrome is an episodic illness marked by alternate periods of remission and work-disruptive symptoms. Thomas contends that under the standard established by *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986), the ALJ was required to explicitly consider whether Thomas would be able to maintain employment over an extended period of time.

In *Singletary*, the Fifth Circuit considered a case in which the evidence showed that the claimant had bipolar disorder that waxed and waned over time. The court recognized that "such circumstances raise two important questions. First, does the impairment meet the 12 month duration requirement? Second, is the impairment so severe as to prevent the claimant from engaging in substantial gainful activity?" 798 F.2d at 821. The Fifth Circuit noted that the Social Security Act requires only that a claimant show he has an impairment that will last or lasted for a 12 month period; it does not require a claimant to show that he was unable to work during the entire 12 month period. *Id.* In *Singletary*, the evidence showed that the claimant was able to find and perform certain jobs but was unable to remain employed for more than limited periods of time. The Fifth Circuit "was not satisfied that substantial evidence supports a determination that Singletary could obtain *and maintain* employment." *Id.* at 823 (emphasis in original). In *Watson v. Barnhart*, 288 F3d. 212, 217 (5th Cir. 2002), the Fifth Circuit made clear that what it called the "*Singletary* standard" is not limited to cases involving mental illness. "The individual's ability to maintain employment should be relevant to a determination of disability regardless of whether the individual suffers from non-exertional limitations." *Id.* at 218.

The Fifth Circuit clarified the scope of *Singletary* and *Watson* in *Frank v. Barnhart*, 326 F.3d 618, 621 (5th Cir. 2003). In *Frank*, the Fifth Circuit rejected the contention that "the ALJ must

7

in every case articulate separate and distinct findings that the applicant can perform the incidents of a job *and* that he can maintain the job over a sustained period, even if the applicant does not contend that his situation resembles Singletary's." *Id.* at 621 (emphasis in original). In his petition for rehearing, Frank contended that the Fifth Circuit's decision in *Watson v. v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), extended *Singletary* to every disability determination. The Fifth Circuit denied rehearing because "*Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms." *Id.* at 619. Frank, the court held, "did not establish the factual predicate required by *Watson* to necessitate a separate finding in this regard." *Id.*

The Fifth Circuit again addressed, and rejected, the contention that an ALJ must always make specific findings regarding a claimant's ability to maintain employment in *Perez v. Barnhart*, 415 F.3d 457, 465-66 (5th Cir. 2005). The Fifth Circuit held that the evidence, which included Perez's testimony that he has good days and bad days and that his pain varied in intensity between epidural injections, the medical opinion of a doctor that had never performed any clinical examination of Perez, and the testimony of another witness that, in his opinion, Perez would not be able to work on a reliable basis, "does not come close to meeting the standard required by *Frank.*" *Id.* at 466.

In *Bates v. Colvin*, Civil Action No. 3:13-CV-1659, 2014 WL 408052 *7-8 (N.D. Tex. 2014), the district court applied the *Singletary* standard in a case where the claimant suffered from cyclic vomiting syndrome (CVS). The court recognized that an ALJ need not make a finding regarding a claimant's ability to maintain employment in every case, and that the ability to work on a sustained basis is inherent in the definition of residual functional capacity. *Id.* at *7. However, the court found that "CVS is characterized by its episodic features and the way in which it waxes

and wanes over time. This is evident both from Plaintiff's medical records, which document periods of increased symptoms at times and fewer symptoms at other times, and in the medical literature and caselaw." *Id.* at 8. Thus, in *Bates* the court held that "the ALJ should have made a specific finding regarding Plaintiff's ability to maintain work because his CVS waxes and wanes in its manifestation of disabling symptoms." *Id.* (*citing Frank*, 326 F.3d at 619-20).

The evidence cited in the ALJ's decision, Dkt. 9-3 at 20-25, reflects that Thomas sought treatment for vomiting in February, June, October, and November, 2009. In February 2010, she reported that her vomiting syndrome was stable. However, in February 2011 Thomas was again hospitalized for acute cyclic vomiting syndrome. She sought further treatment for symptoms from CVS in April and July 2011. She regularly saw a gastroenterologist in 2012-14 for monitoring of her condition and refilling of prescriptions, but she testified that she did not go to the hospital for treatment during this period because she lost her health insurance. Dkt. 9-3 at 68-69. She returned to her gastroenterologist with nausea, vomiting, abdominal pain, and weight loss in October 2015. Yet, in May 2016 she reported to her gastroenterologist that she had been doing well.

Dr. Goldstein, an agency consultative medical expert, testified that Thomas had been diagnosed with CVS and had been hospitalized due to the condition. Goldstein admitted that he had never treated a patient with CVS, and his opinion was based on reading literature about a "typical" case. Based on his reading, he opined that Thomas would have 3 to 4 episodes a year, and "she would miss two, maybe 3 days" with each episode, or "12 day[s] or so in a year." Dkt. 9-3 at 51. Dr. Goldstein recognized that Thomas's condition could be more severe, although in his opinion the record did not support such a finding "in the current period." Dkt. 9-3 at 54. The record also shows that Thomas lost her internet-company job in 2009 due to absenteeism related to CVS. Dkt. 9-3 at 67. She attempted to work as a receptionist in 2014, but was let go after 2.5 months

because an episode of CVS struck when she was at work and she was often away from the desk due to vomiting. Dkt. 9-3 at 61-62. The record contains evidence showing that Thomas's CVS symptoms are episodic.

Like Bates, Thomas has established the required factual predicate for application of the *Singletary* standard. The ALJ did not specifically consider Thomas's ability to maintain employment separately from her RFC finding. This is legal error that requires remand to the Commissioner for further proceedings. *See Moore v. Sullivan*, 895 F.2d 1065, 1069-70 (5th Cir. 1990) ("[W]here the Secretary has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial," even when there is some evidence in the record that would support a finding that the claimant could obtain and maintain employment.).

### 2. Closed period of disability

The Social Security Act defines disability as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months." Dkt. 9-3 at 12. The ALJ concluded that based on her applications filed on September 27, 2013 for a period of disability and disability insurance benefits and for supplemental security income, Thomas is not disabled under sections 216(i), 223(d), and 1614(a)(3)(4) of the Social Security Act. Dkt. 9-3 at 26.

In a case where the claimant is under a continuing disability, an ALJ uses the five-step sequential analysis to decide whether a person is disabled within the meaning of the Social Security Act. However, in a case involving a closed period of disability, "the decision-maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of the decision." *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir.

2002) (quoting *Picket v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987); *Moreland v. Astrue,* No. CIV.A. 1:08CV82-SAA, 2009 WL 3246694, at *5 (N.D. Miss. Sept. 30, 2009) ("It is the policy of the Social Security Administration to establish a closed period of disability where the evidence establishes that a plaintiff was unable to engage in substantial gainful activity for a continuous period of 12 months, but the claimant is no longer disabled by the time a disability determination is made."). Thus, "a closed period of disability entails both a disability and a termination" determination. *Vicknair v. Astrue*, Civil Action No. 1:08-CV-052, 2009 WL 294764 *6 (N.D. Tex. Sept. 15, 2009). The Fifth Circuit applies the "medical improvement standard" to determining the cessation of disability date in closed period cases. *Waters*, 276 F.3d at 719. Under the medical improvement standard, "the government must show in all respects that the person is no longer disabled." *Id.* at 717. "Medical improvement is related to a claimant's ability to work if there has been a decrease in the severity of the impairment and an increase in the claimant's functional capacity to do basic work activities." *Teague v. Astrue*, 342 Fed. App'x 962, 964 (5th Cir. 2009); *Van Allen v. Astrue*, Civil Action No. 1:09-CV-041, 2010 WL 3766690 * 6 (N.D. Tex. Sept. 28, 2010) ("A determination of medical improvement must be based on changes (improvements) on the symptoms, signs, and/or laboratory findings associated with the claimant's impairments 20 C.F.R. §§ 404.1594(b)(1)-(5), 416.994(f)(4). Such improvement must be related to the ability to perform work. *Id.*"). The ALJ made only a determination of no disability, and did not engage in a termination, or "medical improvement" analysis.

The court finds unpersuasive the Commissioner's argument that Thomas waived her right to benefits for a closed period of disability. In this case, the ALJ was tasked with determining disability over an unusually long period of time. Thomas alleged disability from February 2009 through the date of the ALJ decision in 2017. However, as the ALJ's decision makes clear, Thomas

also asked for a "period of disability." The administrative process is not adversarial in nature: "it is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). The Commissioner points out that Thomas has not cited a case expressly remanding a case for consideration of a closed period of disability at this stage of the proceedings, but neither has the Commissioner cited a case endorsing waiver under similar circumstances. Cases such as *Dounley v. Commissioner*, Civil Action No. 3:08-CV-1388, 2009 WL 2208021 *8-9 (N.D. Tex. July 22, 2009) (finding ALJ erred in failing to consider claimant's RFC during a closed period), favor Thomas.

The ALJ briefly summarized Thomas's extensive medical history in her decision. Dkt. 9-3 at 20-25. Thomas was hospitalized numerous times between February 2009 and March 2012. These hospitalizations involved treatment for CVS, psychiatric symptoms, and back pain and surgery. *See also* Dkt. 15 at 6-10 and records cited therein. After back surgery, Thomas was placed on restrictions forbidding lifting, bending, twisting, and all exercise other than walking, Dkt. 9-10 at 47, and the record does not indicate when or if her doctor lifted these restrictions. From 2012 through at least 2016, Thomas continued to be monitored for her CVS and other conditions, but was not hospitalized.

Despite her hospitalization history, the ALJ's ultimate decision is based primarily, if not exclusively, on Thomas's post-2012 medical records. For example, the ALJ stated "treatment records from 2012 to the present show the claimant managed her multiple impairments through prescription medication refills" and she has not been hospitalized since 2012. Dkt. 9-3 at 20, 23-24. In further disregard of her multiple hospitalizations from 2009-2012, the ALJ also stated that "the foregoing medical record demonstrates only that the claimant has to take medications with regularity. Such routine care simply does not rise to the level of severity required for a finding of

disability." *Id.* at 24. Moreover, the ALJ afforded great weight to the hearing testimony of Dr. Griffin in addressing Thomas's mental health impairment. *See* Dkt. 9-3 at 16. Dr. Griffin accepted the 2014 opinion (Dkt. 9-17 at 69-74) of consultative examiner Dr. Swanson that Thomas had major depressive disorder, with only mild limitations in the areas of activities of daily living, social functioning, and maintaining concentration, persistence or pace, and that there was no evidence of decompensation. Dkt. 9-3 at 40-42. Dr. Griffin discounted Thomas's mental health evaluation from her February 2012 hospitalization which assessed her GAF as 25-35 (Dkt. 9-15 at 73-74) "because it is a four-year old document," instead basing her opinion on Dr. Swanson's evaluation that Thomas's "prognosis *would improve* with the consistent use of psychotropic medications" and that "*currently* her physical problems are primary and her emotional problems are secondary" (Dkt. 9-17 at 74) because it is "the most recent evaluation." *Id.* at 44 (emphasis added).

As to her physical limitations, the ALJ relied heavily on the hearing testimony of Dr. Goldstein. Dr. Goldstein testified that Thomas "had some hospitalizations early on where she was throwing up and was dehydrated;" "her hospitalizations were for two or three days at a time;" and "2013 . . . is the last thing that I can see in the record saying that she's having these episodes." Dkt. 9-3 at 49, 51, 52. When asked whether Thomas's episodes of CVS could be more frequent and more severe than what Dr. Goldstein considered "typical" based on medical literature, Dr. Goldstein acknowledge that they could be, but it is "not documented in the medical records in 2014 or 2015." He discounted a 2016 letter from Thomas's treating physician, Dr. Salvato, describing the history of Thomas's condition (Dkt. 9-18 at 97-100), apparently because it did not reflect what was going on with the patient "in the current period." Dkt. 9-3 at 54.  In addition, Dr. Goldstein discounted a September 2015 impairment questionnaire and October 2015 treatment notes completed by a treating physician, Dr. Darmadi (Dkt. 9-18 at 74-83). Goldstein reasoned

that although Thomas "was having these episodes, as I say, she was hospitalized. We saw several episodes that she did have," he nonetheless believed that Darmadi's statement that Thomas was having these episodes every three to six weeks "is two or three times more than one would expect from what I read about the frequency of these spells and the syndrome." Goldstein also felt that the continuing weight loss, epigastric tenderness, and gastroparesis that Dr. Darmadi noted had being going on over the past five weeks were "not the typical picture for the cyclical vomiting syndrome," and "I would think one should start looking for some other cause of her problem with weight loss." Dkt. 9-3 at 55-56. Dr. Goldstein also questioned why "there weren't any notes after" 10/22/15. However, even if the ALJ did not err in relying on Goldstein's opinion regarding Thomas's current condition, the decision does not explain why the records of Thomas's hospitalizations and treatment from 2009 through 2012 are not worthy of consideration for a closed period of disability. The court concludes that the ALJ's determination that Thomas has not been under a disability *at any time* between February 4, 2009 and February 15, 2017 is not supported by substantial evidence and this case must be remanded to the Commissioner for further consideration, including consideration of a closed period of disability.

### 3. The ALJ's RFC determination does not include all limitations supported by the record.

Dr. Goldstein testified "if [Thomas] started to have some of the vomiting, she would need to obviously be able to get to a restroom or something of that nature that would have to be readily available." Dkt. 9-3 at 51. This is supported by Thomas's testimony and her treating physician's letter stating that her episodes of vomiting come on with little warning, Dkt. 9-3 at 77; Dkt. 9-18 at 100. The ALJ recognized this limitation in her opinion. Dkt. 9-3 at 24 ("If the claimant began vomiting, she would need to get to a restroom easily."). But she did not include this limitation in her RFC determination or in her hypothetical questions to the vocational expert. Dkt. 9-3 at 78-82.

For this reason, the court concludes that the ALJ's disability determination is not supported by substantial evidence.

### III. CONCLUSION

For the reasons discussed above, the court recommends that the Commissioner's motion be denied, Thomas's motion be granted, and this case be remanded to the Commissioner for further proceedings pursuant to sentence 4 of § 405(g).

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 8608.

Signed on January 30, 2019, at Houston, Texas.

Christina A. Bryan<br>United States Magistrate Judge